IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

ESTATES OF WILLIAM I. GRIFFITH and )
RONALD MAYNOR, )
and )
MORELAND & MORELAND, )
2518 Kanawha Boulevard, Charleston, WV )
and )
UNITED MINE WORKERS OF AMERICA, )
INTERNATIONAL UNION, )
18354 Quantico Gateway Drive, Triangle, VA )
                 )
      Plaintiffs, )
 v.                )  Civil Action No. 2:10-0716
                 )
JOSEPH MAIN, Assistant Secretary )
MINE SAFETY and HEALTH ADMINISTRATION )
U.S. Department of Labor, )
                 )
      Defendant. )

## VERIFIED COMPLAINT

1. Plaintiffs, the Estates of William I. Griffith, Ronald Maynor, the law firm of Moreland & Moreland, and the United Mine Workers of America ("UMWA"), bring this action pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, and 28 U.S.C. Sections 1331 and 1651(a) seeking injunctive and declaratory relief. Plaintiffs seek a declaration that the Defendants U.S. Department of Labor and its Mine Safety and Health Administration ("MSHA") a) must convene public hearings to investigate the Upper Big Branch mine disaster, and must include in the investigative interviews representatives of miners killed at the Upper Big Branch as well as the UMWA and any other properly designated miners' representatives for miners at the Upper Big Branch mine; and b) be enjoined from conducting private investigative interviews.

2. Moreland & Moreland is a law firm located in Charleston and Lewisburg, West Virginia. It is seeking a) MSHA designation as a miners' representative for surviving miners

employed at the Upper Big Branch mine pursuant to the Federal Mine Safety and Health Act of 1977 ("Mine Act"), 30 U.S.C. Sec. 801, 813 (f); and b) to provide a voice for the family members of miners killed. The firm serves as the legal representative of two widows of deceased Upper Big Branch miners: William I. Griffith and Ronald Maynor.

3. The UMWA is an unincorporated association, and since April 23, 2010 serves as a designated miners' representative pursuant to Section 103(f) of the Mine Act (30 U.S.C. Sec. 813(f)) for purposes of health and safety for surviving miners employed at the Upper Big Branch mine.

4. MSHA is the agency charged with overseeing the safety and health of the nation's mines.

5. MSHA has the duty, *inter alia*, to investigate the causes of mine accidents. 30 U.S.C. Sec. 813(a).

6. On April 5, 2010, there was a catastrophic mine disaster at the Upper Big Branch mine, which killed 29 coal miners; it was the worst mine disaster in 40 years.

7. Under the Mine Act, to investigate any accident the Secretary of Labor has the authority to "hold public hearings, and may sign and issue subpoenas for the attendance and testimony of witnesses and the production of relevant papers, books, and documents, and administer oaths." 30 U.S.C. Sec. 813(b).

8. Without use of the public hearing for investigative interviews, MSHA's investigation into any accident depends on the cooperation of witnesses, any of whom may refuse to answer any particular questions or all of them; they also can refuse to provide documents or any other information.

9. MSHA has already indicated that it will consider its own conduct and its own possible role in the Upper Big Branch mine only in a separate proceeding and as a separate matter, but not as part of the accident investigation.

10. Since the April 5 tragedy, families of miners killed at the Upper Big Branch mine and miners' representatives including the UMWA, have repeatedly called upon MSHA to conduct public hearings to investigate the Upper Big Branch disaster. The UMWA also sent a written request for a public hearing to the Secretary of Labor and the Assistant Secretary for Mine Safety and Health on April 28, 2010.

11. On May 4, 2010, the West Virginia Board of Coal Mine Health and Safety, the State Board responsible for promulgating coal mine health and safety regulations and conducting other activities to improve coal mine health and safety in West Virginia, formally requested MSHA to conduct a public hearing, which hearing it specified should include, *inter alia*, "the authorized representatives."

12. In an editorial on April 20, 2010, the Charleston Gazette newspaper demanded that the Upper Big Branch investigation be conducted in a transparent manner, unlike the closed-door sessions MSHA has most-recently used when investigating mine accidents. And on May 6, 2010, the Charleston Daily Mail also called for open hearings as the "best way to guarantee that this investigation follows the evidence and produces the truth, the whole truth, and nothing but the truth. That's what the Upper Big Branch miners deserve, and that's what MSHA should deliver." The Reporters Committee for Freedom of the Press also requested fully open proceedings.

13. By its press release of May 6, 2010, MSHA announced that it will conduct public proceedings in connection with the Upper Big Branch investigation, but before doing so it will "*conduct private interviews* of miners, mining officials and others with knowledge and information about the disaster....[and] contents of these investigative interviews will be made public...*unless the interviewee would request confidentiality*...(emphasis added)."

14. On May 7, 2010, Governor Manchin, criticizing MSHA's investigation procedures, stated that he "wished that MSHA would have completely opened the overall investigation."

15. MSHA's private investigative process is designed to and will exclude miners' representatives, as well as family representatives.

16. Unless MSHA conducts its investigative interviews in public with all witnesses subject to the government's subpoena power, MSHA's accident investigation will not be thorough; a compromised investigation likely will not uncover the root causes of what went wrong at the Upper Big Branch mine.

17. Without the participation of miners' representatives in the accident investigative interviews, MSHA's analysis of its own role, if any, will remain secretive and inherently suspect.

18. Without the participation of miners' representatives in the accident investigative interviews MSHA plans to conduct before it convenes any public hearings, only that which witnesses are willing to volunteer will be imparted; from prior accident investigations such as after the Sago disaster, when miners' representatives are excluded from witness interviews, critical questions and follow-up inquiries are forfeited.

19. Without the government requiring witnesses to appear pursuant to subpoena, the interview process is inherently compromised as any witness can simply walk away, leaving the investigation team with half truths, misleading the investigative team.

20. Plaintiffs aver that they will likely succeed on the merits of the complaint.

21. Upon information and belief, in the absence of injunctive relief, MSHA plans to begin its private voluntary interview process during the week of May 10 – perhaps as early as Monday, May 10, 2010 -- during which interviews MSHA plans to exclude miners' and family representatives. As soon as MSHA conducts any of its interviews in private, the miners and family representatives will lose their opportunity to participate in those portions of the investigation.

22. Allowing MSHA to conduct its investigative interviews in secret instead of in public will jeopardize the entire investigation process, which will harm not only the surviving active miners who have designated the UMWA and others as their miners' representative but all other Massey and other underground coal miners who seek to learn the truth to prevent any such future disasters, as well as the widows and family members of those killed, who have a right to learn what really happened and why. The harm to these persons will be greater than any harm to MSHA or any others.

23. The balance of equities favors Plaintiffs' interests.

24. The public interest favors the injunctive relief sought herein.

24. Plaintiffs have no remedy at law.

WHEREFORE, the Plaintiffs pray for the following:

1. That this Court issue a Temporary Restraining Order and/or Preliminary Injunction:

5

A. restraining and enjoining the Defendant, its employees, agents, and all others working in active concert and participation with it from conducting investigative interviews of the Upper Big Branch mine accident:

    1) in private, without the use of MSHA's subpoena power; and

    2) that exclude miners' and family representatives.

B. declaring that when interviewing witnesses in connection with its investigation of the Upper Big Branch mine disaster, MSHA do so pursuant to its authority to conduct investigations by a public hearing and with use of its subpoena power.

C.     That this Court grant such other and further relief as deemed proper.

    Respectfully submitted,

*/s/ Grant Crandall*

JUDITH RIVLIN,
GRANT CRANDALL, Bar #861
United Mine Workers of America
18354 Quantico Gateway Drive
Triangle, VA 22172-1779
(703) 291-2429

CHARLES F. DONNELLY, Bar #1039
1300 KANAWHA BLVD, EAST
CHARLESTON, WV 25301
(304) 343-0259

BRAD PYLES, Bar #2998
PYLES & TURNER, LLP
P.O. BOX 596
LOGAN, WV 25601
(304) 752-6000
COUNSEL FOR UNITED MINE WORKERS OF AMERICA

RACHEL MORELAND, Bar #9767
Moreland & Moreland, LP

2518 Kanawha Blvd.
Charleston, WV 25311
(304) 344-5278
COUNSEL FOR MINERS AND THE
ESTATES OF WILLIAM I. GRIFFITH
AND RONALD MAYNOR

COMMONWEALTH OF VIRGINIA ) 
                                             ) SS. 
COUNTY OF PRINCE WILLIAM ) 

### VERIFICATION

This day, Dennis O'Dell personally appeared before me, and after first being duly sworn, deposes and states that he is the Administrator of Occupational Health and Safety Department of United Mine Workers of America, International Union, which hereby moves for a Temporary Restraining Order in the matter of *United Mine Workers of America, Estates of Griffith and Maynor, Moreland & Moreland, and v. Joseph Main, Assistant Secretary of Labor,* and that as such, he is authorized to execute this Verification on its behalf with regard to the Verified Complaint and Motion for Temporary Restraining Order; that he has read the Verified Complaint and Motion for Temporary Restraining Order and knows the contents thereof; and that the facts set forth therein are true to the best of his knowledge, information and belief.

*Dennis O'Dell*
Dennis O'Dell

Given under my hand and seal this 7th day of May, in the year 2010.

*Rebecca Gillespie*
Notary Public



REBECCA GILLESPIE
Notary Public
Commonwealth of Virginia
Reg. #7320704
My Commission Exps. July 31, 2014