**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

**ESTATES OF WILLIAM I. GRIFFITH and RONALD MAYNOR, and MORELAND & MORELAND, 2518 Kanawha Boulevard, Charleston, WV, and UNITED MINE WORKERS OF AMERICA, INTERNATIONAL UNION, 18354 Quantico Gateway Drive, Triangle VA,**

**Plaintiffs,**

**v.** **Civil Action No. 2:10-0716**

**JOSEPH MAIN, Assistant Secretary MINE SAFETY AND HEALTH ADMINISTRATION, U.S. Department of Labor,**

**Defendant.**

**UNITED STATES MEMORANDUM**
**IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

## BACKGROUND

### The Mine Act

Through passage of the Federal Mine Safety and Health Act of 1977, (the "Mine Act"), 30 U.S.C. §§ 801-962, Congress declared that, "the first priority and concern of all in the coal or other mining industry must be the health and safety of its most precious resource - the miner." 30 U.S.C. § 801(a). Congress recognized that "deaths and serious injuries from unsafe and unhealthful conditions and practices in the coal or other mines cause grief and suffering to the miners and to their families." 30 U.S.C. § 801(b). Thus, Congress concluded, "there is an urgent need to provide more effective means and measures for improving the working

conditions and practices in the Nation's coal or other mines in order to prevent death and serious physical harm." 30 U.S.C. § 801(c).

To this end, Congress authorized the United States Secretary of Labor ("Secretary"), acting through the Mine Safety and Health Administration ("MSHA"), to promulgate mandatory safety and health standards, conduct regular inspections, and conduct investigations of the Nation's mines. 30 U.S.C. §§ 811 and 813. Congress granted the Secretary broad authority to conduct investigations and placed no restriction or requirement on how the investigations should be undertaken:

> Authorized representatives of the Secretary . . . shall make . . . investigations in coal and other mines each year for the purposes of 1) obtaining utilizing and disseminating information relating to health and safety conditions, the causes of accidents, and the causes of diseases and physical impairments originating in such mines...

30 U.S.C. 813(a). Congress vested absolute discretion and sole responsibility for investigations under the Mine Act to the Secretary and her designees. Id. There is no right, under the Mine Act or otherwise, of public access to or participation in accident investigations. The Secretary may conduct these investigations in the manner she deems most appropriate and effective, always mindful of the best interests of the miners.

Statement of the Case

On April 5, 2010, an explosion at the Upper Big Branch Mine-South, in Raleigh County, West Virginia, claimed the lives of 29 miners. Pursuant to the mandate from Congress, MSHA initiated an investigation to determine the root cause(s) of the explosion and the resulting deaths, how to prevent similar incidents from occurring in the future, whether violations of mandatory safety and health standards occurred or exist, and whether and when it is safe to resume mining operations.[1] 30 U.S.C. § 813(a). In recognition of this grave responsibility, MSHA elected to conduct non-public investigative interviews of potential witnesses preliminary to public hearings.

On May 11, 2010, Plaintiffs initiated the instant action through verified complaint pursuant to Fed. R. Civ. P. 65, 28 U.S.C. §§ 1331 (Federal Question) and 1651 (Writs).[2] The complaint

---

[1] The United States Department of Justice has confirmed that a criminal investigation arising out of this incident and previous incidents has been initiated and is ongoing.

[2] Plaintiffs have brought this action against Joseph Main, in his official capacity as the Assistant Secretary of MSHA. An action against the agencies of the United States is an action against the United States. Lane v. Pena, 518 U.S. 187 (1996); Research Triangle Institute v. Board of Governors, 132 F.3d 985 (4th Cir. 1997), cert. denied, 525 U.S. 811 (1998). Accordingly, the United States is the real party in interest. Rule 17(a), Fed. R. Civ. P. ["Every action shall be prosecuted in the name of the real party in interest."] Federal agencies and their instrumentalities cannot be sued eo nomine absent explicit authorization by Congress. Blackmar v. Guerre, 342 U.S. 512 (1952); City of Whittier v. United States Department of Justice, 598 F.2d 561 (9th Cir. 1979); Lynn v. United States Department of Health and Human Services, 583 F. Supp. 532 (S.D.N.Y. 1984); Pflaumer, Inc. v. United States Department of Justice, 450 F. Supp. 1125 (E.D. Pa. 1978). Thus, Plaintiffs have failed to state a claim upon which relief may be granted. Rule 12(b)(6), Fed. R. Civ. P.

seeks both injunctive and declaratory relief.[3] Specifically, Plaintiffs ask this Court to exercise its inherent equitable powers to force MSHA to convene public hearings and prevent MSHA from conducting its investigation, including witness interviews, in the manner MSHA deems most effective. In other words, Plaintiffs ask this Court to order MSHA to substitute Plaintiffs' judgment for that of Congress, and allow Plaintiffs and others to participate, control, and interfere in MSHA's statutorily mandated investigation of this mine disaster. Plaintiffs cite absolutely no legal authority for their demands, argue in the face of contrary law - including the plain language of the Mine Act - and ignore perhaps the most well established legal principle in American jurisprudence, the doctrine of sovereign immunity. In the absence of legal authority, including an express waiver of sovereign immunity, this Court is without jurisdiction, and Plaintiffs' complaint must be dismissed.

## DISCUSSION

### Sovereign Immunity

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). The principle of sovereign immunity has been

[3] Though Plaintiffs seek "a declaration" in this matter, they fail to cite the Declaratory Judgment Act, 28 U.S.C. § 2201. For additional discussion, see p.9-10.

recognized by the Supreme Court since as early as 1821 and has, for nearly two centuries, been consistently affirmed.[4]

When sovereign immunity applies, it operates as a complete bar to suits against the United States, its departments and agencies, and its officers and employees. Dugan v. Rank, 372 U.S. 609 (1963); Smith v. Cromer, 159 F.3d 875 (4th Cir. 1998), cert. denied, 528 U.S. 826 (1999); Portsmouth Redevelopment and Housing Authority v. Pierce, 706 F.2d 471 (4th Cir.), cert. denied, 464 U.S. 960 (1983). It precludes actions seeking monetary damages, as well as actions requesting equitable, non-monetary relief. Actions are prohibited by sovereign immunity when the relief sought would require specific action on the part of government officials regarding government property, the administration of government programs or the specific performance of a contract. Portsmouth Redevelopment and Housing Authority v. Pierce, supra; See also, Serra v. General Services Administration, 847 F.2d 1045 (2d Cir. 1988); Organized Fishermen of Florida v. Hodel, 775 F.2d 1544 (11th Cir. 1985), cert. denied, 476 U.S. 1169 (1986); Panola Land Buyers Association v. Shuman, 762 F.2d 1550 (11th Cir. 1985). Actions seeking equitable relief are likewise barred if the relief sought

---

[4] See e.g., Library of Congress v. Shaw, 478 U.S. 310 (1986); Block v. North Dakota, 461 U.S. 273 (1983); Ruckelshaus v. Sierra Club, 463 U.S. 680 (1983); United States v. Mitchell, 463 U.S. 206 (1983); Lehman v. Nakshian, 453 U.S. 156 (1981); United States v. Testan, 424 U.S. 392 (1976); Dalehite v. United States, 346 U.S. 15 (1953); Feres v. United States, 340 U.S. 135 (1950); United States v. Sherwood, 312 U.S. 584 (1941); United States v. Shaw, 309 U.S. 495 (1940); United States v. Eckford, 73 U.S. 484 (1867); Cohens v. Virginia, 19 U.S. 264 (1821).

would interfere with public administration or compel the government to act or refrain from acting. United States v. Mitchell, 463 U.S. 206 (1983); Portsmouth Redevelopment and Housing Authority v. Pierce, supra; See also, Ghandi v. Police Department of Detroit, 747 F.2d 338 (6th Cir. 1984); Van Drasek v. Lehman, 762 F.2d 1065 (D.C. Cir. 1985). Thus, in all its forms and contexts, the sovereign is immune from suit unless it consents to be sued. Hercules Inc. v. United States, 516 U.S. 417 (1996).

Congress, and Congress alone, has the authority to determine whether and under what circumstances to waive the immunity of the United States. United States v. Testan, 424 U.S. 392 (1976) Without the express authorization of Congress, consent to suit cannot be provided by a court, regulations promulgated by a government agency or by government officers. United States v. United States Fidelity & Guaranty Co., 309 U.S. 506 (1940); Mitzelfelt v. Department of Air Force, 903 F.2d 1293 (10th Cir. 1990); Heller v. United States, 776 F.2d 92 (3d Cir. 1985), cert. denied, 476 U.S. 1105 (1986); United States v. One Douglas A-26(b) Aircraft, 662 F.2d 1372 (11th Cir. 1981). The authority of Congress includes the right to place conditions and limitations on a waiver of sovereign immunity. Honda v. Clark, 386 U.S. 484 (1967). Thus, the United States may be sued only to the extent that Congress has waived sovereign immunity by enacting a statute consenting to suit. Maricopa County v. Valley National Bank, 318 U.S. 357 (1943); United States v. United States Fidelity & Guaranty

Co., 309 U.S. 506 (1940); Lynch v. United States, 292 U.S. 571 (1934).

The terms of Congressional consent to file suit define the court's jurisdiction. The absence of consent to suit is a jurisdictional defect precluding a court's consideration of an action. J.C. Driskill Inc. v. Abdnor, 901 F.2d 383 (4th Cir. 1990).

Sovereign Immunity and Subject Matter Jurisdiction

In any action against the United States, there must be a cognizable claim, subject matter jurisdiction and a waiver of sovereign immunity. The waiver of sovereign immunity is a prerequisite to subject matter jurisdiction. United States v. Mitchell, 463 U.S. 206, 212 (1983). However, the issues of subject matter jurisdiction and sovereign immunity are, nonetheless, "wholly distinct." Blatchford v. Native Village of Noatak, 501 U.S. 775, 786-787 (1991).

A showing of jurisdiction is not, alone, sufficient to allow Plaintiffs' complaint to proceed. Plaintiffs must also identify a specific and corresponding waiver of sovereign immunity arising out of a legally cognizable cause of action. Presidential Gardens Associates v. United States, 175 F.3d 132, 139 (2d Cir. 1999). Plaintiffs have the burden of establishing both a statutory waiver of sovereign immunity and a jurisdictional basis to proceed in district court. Fed. R. Civ. P. 12(b)(1); McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936); Adams v.

Bain, 697 F.2d 1213 (4th Cir. 1982); Cole v. United States, 657 F.2d 107, 109 (7th Cir.), cert. denied, 454 U.S. 1083 (1981). In other words, as a predicate to suit, Plaintiffs must affirmatively establish that Congress has waived sovereign immunity for a claim cognizable at law, and that Congress has provided for jurisdiction in the federal courts. North Star Alaska v. United States, 9 F.3d 1430, 1432 (9th Cir. 1993) (en banc) (per curiam), cert. denied, 512 U.S. 1220 (1994); Transohio Savings Bank v. Director of Thrift Supervision, 967 F.2d 598, 606 (D.C. Cir. 1992). Plaintiffs have not and cannot meet these prerequisites to suit against the United States in this action.

Federal Question, All Writs Act and Fed. R. Civ. P. 65

The instant complaint references two statutes, 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1651 (Writs), and Federal Rule of Civil Procedure 65. The Federal Question statute confers only general jurisdiction on the district court and neither statute nor Rule 65 provide a waiver of sovereign immunity.

The Federal Question statute, 28 U.S.C. § 1331, "is not a general waiver of sovereign immunity. It merely establishes a subject matter that is within the competence of federal courts to entertain." Randall v. United States, 95 F.3d 339 (4th Cir. 1996), cert. denied, 519 U.S. 1150 (1997), quoting, Coggeshall Development Corporation v. Diamond, 884 F.2d 1, 4 (1st Cir. 1989); Radin v. United States, 699 F.2d 681, 684-85 (4th Cir. 1983). In the absence of an express waiver of sovereign immunity, the federal

question statute does not meet jurisdictional requirements necessary to allow Plaintiffs to proceed against the United States in the district court.

The All Writs Act, 28 U.S.C. 1651, is not a waiver of sovereign immunity, nor is it an independent source of subject-matter jurisdiction. "As the text of the [Act] recognizes, a court's power to issue any form of relief -- extraordinary or otherwise -- is contingent on the court's subject-matter jurisdiction over the case or controversy." United States v. Denedo, ___ U.S. ___, 129 S. Ct. 2213, 2221 (2009). The All Writs Act does not create subject matter jurisdiction for courts where such jurisdiction would otherwise be lacking. Burr v. Forman v. Blair, 470 F.3d 1019 (11th Cir. 2006). Rule 65 does not confer jurisdiction on federal courts. Instead, it restricts the power of the federal court to act in those cases in which it already has jurisdiction. United States v. Cohen, 152 F.3d 321 (4th Cir. 1998).

District Courts of the United States derive their jurisdiction wholly from the authority conferred upon them by Congress. Unless there is some statute of the United States which authorizes Plaintiffs' action, the court is without power to proceed. If such authority exists, Plaintiffs have failed to identify it.

The Declaratory Judgment Act

The verified complaint seeks a "declaration" requiring MSHA to convene public hearings that include miners' representatives,

and conduct open and public investigative interviews. Complaint ¶ 1. Again, Plaintiffs cite no legal authority for these demands, and in fact, fail to cite the Declaratory Judgement Act in their complaint.

In appropriate circumstances, authority for declaratory relief may be found in the Declaratory Judgment Act, 28 U.S.C. § 2201. In this case, however, the Declaratory Judgement Act affords Plaintiffs no such remedy. As noted by the Court of Appeals for the Tenth Circuit:

> It is settled that 28 U.S.C. § 2201 does not itself confer jurisdiction on a federal court where none otherwise exists. That statute was adopted by Congress to enlarge the range of remedies available in federal court, and does not extend subject matter jurisdiction to cases in which the court has no independent basis for jurisdiction.

Amalgamated Sugar Co. v. Bergland, 664 F.2d 818, 822 (10th Cir. 1981); see also Gibraltar P.R. Inc. v. Otoki Group, Inc., 104 F.3d 616, 169 (4th Cir. 1997). (The Declaratory Judgment Act "does not provide a source of jurisdiction which is independent of substantive federal law.") Moreover, the Declaratory Judgment Act does not waive sovereign immunity, and thus cannot form a basis for jurisdiction in this action. See, e.g., Balistrieri v. United States, 303 F.2d 617 (7th Cir. 1962); Anderson v. United States, 229 F.2d 675 (5th Cir. 1956). Plaintiffs must look to the statute giving rise to the cause of action for a waiver of sovereign immunity.

Plaintiffs' Alleged Cause of Action

Plaintiffs identify no cognizable cause of action. As discussed above, Plaintiffs cite only to the Federal Question Statute, the All Writs Act, and Fed. R. Civ. P. 65. None of this legal authority provides for an independent cause of action against the United States, nor do they include a waiver of sovereign immunity.

The Administrative Procedures Act

In appropriate cases, the Administrative Procedures Act, 5 U.S.C. § 702 ("APA"), allows plaintiffs to seek redress for the acts of federal governmental agencies that cause them legal harm. The APA does not provide an independent jurisdictional basis, but merely prescribes the standards for reviewing an agency action once jurisdiction is otherwise established. See Califano v. Sanders, 430 U.S. 99 (1977). Where the APA is properly invoked, jurisdiction may be conferred under 28 U.S.C. § 1331. Id. at 105-106. If review is proper under the APA, the district court may acquire jurisdiction under 28 U.S.C. § 1331. Bowen v. Massachusetts, 487 U.S. 879, 891 n. 16 (1988).

In this case, however, review is not available under the APA. Section 507 of the Mine Act, 30 U.S.C. § 956, provides that "sections 701 to 706 [of the APA] shall not apply to the making of any order, notice, or decision made pursuant to [the Mine Act], or to any proceeding for the review thereof." Thus, Plaintiffs are

statutorily prohibited from seeking judicial review of MSHA's actions under the APA.

CONCLUSION

Parties invoking the equitable powers of the federal courts bear the burden of establishing the existence of jurisdiction. Simply asserting that they want a federal court or federal agency to act in a particular manner or that it would beneficial to them if the court or agency did so, is insufficient. Though Plaintiffs seek both injunctive and declaratory relief against an independent agency of the Executive Branch of the sovereign exercising its discretionary authority, they have failed to identify a claim cognizable at law, a statutory right to jurisdiction in this court, and an express waiver of sovereign immunity. In the absence of jurisdiction, Plaintiffs' complaint must be dismissed.

Accordingly, for these reasons, and the reasons set forth more fully herein and in the United States response in opposition to Plaintiffs' motion for a TRO and preliminary injunction, the United States respectfully requests that Plaintiffs' complaint be dismissed.

Respectfully submitted,

CHARLES T. MILLER
United States Attorney

**s/Carol A. Casto**
Assistant United States Attorney
WV State Bar Number 890
Attorney for United States
P.O. Box 1713
Charleston, WV 25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: carol.casto@usdoj.gov