UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

ESTATES OF WILLIAM I. GRIFFITH and
RONALD MAYNOR,
and MORELAND & MORELAND,
2518 Kanawha Boulevard, Charleston, WV,
and UNITED MINE WORKERS OF AMERICA,
INTERNATIONAL UNION,
18354 Quantico Gateway Drive, Triangle VA,

      Plaintiffs,

v.                                        Civil Action No. 2:10-0716

JOSEPH MAIN, Assistant Secretary
MINE SAFETY AND HEALTH ADMINISTRATION,
U.S. Department of Labor,

      Defendant.

UNITED STATES RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Now comes the United States of America ("United States"), on behalf of Joseph Main, Assistant Secretary of the Mine Safety and Health Administration ("MSHA")[1], and responds in opposition to Plaintiffs' motion for temporary restraining order and preliminary injunction.[2] As is set forth more fully in the United States motion to dismiss and memorandum in support, filed contemporaneously herewith and incorporated by reference herein,

---

[1] See U.S. motion to dismiss, and memorandum in support, n. 2.

[2] Though Plaintiffs filed a single motion for TRO and preliminary injunction, they have taken the unusual step of filing two briefs in response to this Court's order dated May 10, 2010, requiring Plaintiffs to comply with LR 7.1(a)(2) and file "a" supporting memorandum of not more than 20 pages. (Docket #5)

the complaint seeking injunctive and declaratory relief against the United States is barred by sovereign immunity.  Plaintiffs have failed to identify a cognizable cause of action, waiver of sovereign immunity or grant of jurisdiction that would allow this court to review or restrain the investigative activities of MSHA related to the Upper Big Branch mine disaster.  Accordingly, the Court lacks jurisdiction to grant the injunctive and declaratory relief sought in the verified complaint, and the temporary restraining order ("TRO") and preliminary injunction sought through this motion.

Standard for Issuance of<br>a TRO and Preliminary Injunction

A TRO and preliminary injunction are "extraordinary remedies" that should only be issued "sparingly."  <u>Microstrategy Inc. v. Motorola, Inc.</u>, 245 F.3d 335,339 (4th Cir. 2001)(internal quotation marks and citations omitted).  The Court of Appeals for the Fourth Circuit has identified four relevant factors to be considered in determining the propriety of a preliminary injunction:  1) the party is likely to succeed on the merits; 2) the party is likely to suffer irreparable harm in the absence of the requested injunctive relief; 3) the balance of equities tips in favor of the requesting party; and 4) an injunction would be in the public interest.  <u>Real Truth About Obama v. FEC</u>, 575 F.3d 342, 346-47 (4th Cir. 2009), vacated on other grounds __ U.S. ___, 2010 WL 1641299 (April 26, 2010).  A plaintiff must make a "clear showing" that they will

2

likely succeed on the merits and that they are likely to be irreparably harmed absent the requested injunctive relief.[3] Id. at 346-47.  As set forth below, and in the United States motion to dismiss and memorandum in support, Plaintiffs have no meritorious claim upon which they may proceed.  Thus, Plaintiffs cannot meet the first, and most important factor required for a grant of injunctive relief.

Moreover, even if Plaintiffs had brought an action through which injunctive relief was available, it would still not be warranted here.  Congress granted the Secretary broad authority to conduct investigations, including accident investigations, and placed no restrictions on how those investigations should be conducted.  See 29 U.S.C. 813(a) and (b).  In this case, the Secretary has determined that permitting only government officials and witnesses' legal or other representatives to be present at the initial interviews will create the best environment in which to elicit the most probative evidence.  In addition, the Secretary has determined that such interviews will best protect the ongoing criminal investigation.  There is nothing in the Mine Act or anywhere else that permits Plaintiffs to second-guess the

---

[3]   Plaintiffs assert that because Real Truth was vacated on other grounds, the applicable standard for granting preliminary injunctive relief in the Fourth Circuit is unsettled.  UMWA memo. p. 5.  Under the previous standard, the Court employed a more flexible standard so that "grant[ing] or deny[ing] a preliminary injunction depends upon 'a flexible interplay' among all factors..."  Real Truth, 575 F.3d at 346 (quoting Blackwelder Furniture Co. v. Selig Mfg. Co., 550 F.2d 189, 193-96 (4th Cir. 1977).  Under either standard, Plaintiffs cannot meet their  burden.

Secretary's judgment as to how best to conduct such investigations.

<u>Plaintiffs Will Not Suffer Irreparable Harm</u>

Plaintiffs have brought no action that entitles them to the extraordinary relief sought pursuant to Fed. R. Civ. P. 65. Rule 65 is not an independent source of power for a district court to enter an injunction. Rather, it regulates the issuance of injunctions otherwise authorized. <u>United States v. Cohen</u>, 152 F.3d 321, 325 (4th Cir. 1998)(<u>citing</u> <u>Kemp v. Peterson</u>, 940 F.2d 110 (4th cir. 1991)). In other words, Rule 65 does not provide both the means and the end to injunctive relief.

Plaintiffs have no pending action, no request for review, and no claim for relief, save for the verified complaint for injunctive and declaratory relief. Thus, when Plaintiffs argue that they are likely to prevail on the merits, it raises the simple question -- the merits of what? Rule 65 does not provide for an independent cause of action. It is nothing more than a procedural rule that establishes a process through which a court may fashion a remedy in an action otherwise within its jurisdiction. Because Plaintiffs have failed to file an action within the jurisdiction of this Court, the Court is without authority to entertain their inflammatory demands for injunctive relief. Moreover, the actions about which they complain, are committed to the sole discretion of the Secretary of Labor.

In any event, Plaintiffs will not suffer irreparable harm if

4

they are not permitted to participate in MSHA's investigative interviews. First, there is nothing to preclude Plaintiffs from identifying and interviewing potential witnesses on their own. As noted in Plaintiffs briefs, MSHA is not using its subpoena power to compel testimony, but rather, is conducting interviews seeking sworn voluntary testimony from willing participants. Plaintiffs are at liberty to do the same.[4] Second, Plaintiffs will be entitled to civil discovery if and when they file private civil proceedings. This includes the power to conduct interviews, take depositions, and serve interrogatories and requests for production and admissions. Thus, Plaintiffs are not without a remedy at law. Government investigations are not conducted for the benefit of private litigants. Third, Plaintiffs readily acknowledge MSHA's announcement that the investigative interviews are preliminary to public hearings. Accordingly, Plaintiffs are not being denied participation in the process, only in the investigative interviews.[5] Fourth, Plaintiffs make entirely unsupported

---

[4] Indeed, Plaintiffs have declared that they have already had extensive discussions about the explosion, the mine, the operator and MSHA actions with community residents. (Moreland declaration ¶ 2)

[5] The Moreland Law firm's memorandum and Mark Moreland's declaration (Exhibit A) contain repeated claims that the law firm and its clients have been denied access to critical information and deprived the opportunity to participate. This claim is seemingly irreconcilable to his sworn declaration that "We have attended two informational meetings (April 21, 2010 and May 5, 2010) where MSHA representatives met with the families of those miners who perished in the explosion, have conversed personally with MSHA Director Joe Main, MSHA Administrator Kevin Stricklin and MSHA Investigation Leader Norman Page, and have discussed the explosion, the mine operator, and MSHA actions extensively with community residents." (Moreland Declaration, ¶ 2)

assumptions about what the MSHA interviews will reveal and ask this Court to speculate that the investigative process employed by MSHA, a process clearly committed to the discretion of this Executive Branch agency, will be unsuccessful.  Even assuming *arguendo* that the investigative interviews might not yield sufficient reliable evidence, MSHA has not forfeited its subpoena power and can compel the testimony of witnesses when public hearings are convened. Accordingly, Plaintiffs will not suffer irreparable harm if they are not permitted to participate in MSHA's preliminary investigative interviews.

The United States Would Suffer<br>
<u>Significant Harm if Injunctive Relief is Granted</u>

The United States has a legal and moral responsibility to determine how and why 29 miners died in the explosion at the Upper Big Branch mine, and to the extent possible, to ensure that other miners and their families are protected from such tragic losses. Congress has vested both responsibility for and discretion about how to conduct investigations in the Secretary of Labor and her designees.   In  recognition  and  furtherance  of  its  grave responsibilities, the United States, through MSHA and others[6], is committed  to  conducting  a  thorough,  unbiased,  and  thoughtful investigation of this disaster in an efficient and professional

---

[6] Plaintiffs are aware of and have reported witness interviews and an investigation of the mine disaster by the Federal Bureau of Investigation. (Moreland declaration ¶¶ 6, 8-10).  Moreover, the United States Department of Justice has publicly confirmed that a criminal investigation arising out of this incident and previous incidents has been initiated and is ongoing.

manner. Plaintiffs have already attempted to disrupt this process by the initiation of this action without legal authority.

To force MSHA to conduct public interviews and require MSHA to coordinate investigative activities with Plaintiffs and others would necessarily impede the progress of this investigation. Indeed, Plaintiffs represent that they seek to delay the investigation "to see if [Plaintiffs and MSHA] can work out a better investigation procedure." (UMWA memo. p. 6.) In other words, Plaintiffs do not only seek a public hearing, they also seek to delay the investigation in an attempt to control the investigative process.

If Plaintiffs were to be granted the relief requested, the mine operator would likely demand equal access. Allowing the UMWA, private attorneys, private litigants, and representatives of the mine operator to participate in investigative interviews raises the risk that witnesses will be less candid then they would be if they were not fearful of immediate public disclosure of their testimony, and of intimidation by and retribution from persons who may be adversely affected. Candor during initial witness interviews is essential to the gathering of accurate information relevant to the mine disaster. Moreover, information obtained through the investigative process will be gathered by and shared with law enforcement authorities responsible for identifying potential criminal actions and actors. It is entirely

7

unprecedented and unacceptable that law enforcement officers conducting law enforcement activities could be required to coordinate their investigations with Plaintiffs and others, including those who may be criminally responsible.

Finally, giving private lawyers and litigants control over MSHA's investigation is a slippery slope. Subordinating MSHA's investigative powers to private interests would be disastrous to the investigative process and make a mockery of Congress' mandate to MSHA.

The Public Interest is Not Served
By the Requested Injunctive Relief

It is not uncommon that members of the public, including potential subjects and targets, are curious about the focus, direction and evidence developed in the course of a federal investigation. There are important and established reasons why such investigations are not conducted before the public, including the protection of witnesses and the innocent accused, and the integrity of the process.[7] Injunctive relief is not warranted to satisfy the curiosity of those who simply want access to information before it is made public. Such a precedent is dangerous and against the public interest.

The families of the mine disaster victims, other members of the mining community and the general public are entitled to have

---

[7] See n. 4, U.S. Motion to Dismiss.

MSHA fulfill its statutory obligation and determine how this explosion happened and why these miners are dead. Additionally, the public has the right to expect that enforcement action, including criminal prosecution, will be undertaken as appropriate to prevent future disasters and hold accountable those who may have contributed to this tragedy.

MSHA has determined that conducting private investigative interviews, followed by public hearings, is the most effective way to meets its statutory, legal and moral responsibilities. This discretion is vested solely in the Secretary of Labor through the Mine Act, See, 30 U.S.C. §§ 811 and 813, and is exercised ever mindful of the safety of the Nation's miners. At the conclusion of its investigation, and following public hearings and forums, MSHA will release its accident report and its internal review for public review and scrutiny. Premature release of important and sensitive information may jeopardize the integrity of the investigation, compromise witness testimony, and prevent the identification of potentially life saving information. Such a result is clearly not in the public interest.

<u>CONCLUSION</u>

For the reasons set forth herein and in the United States motion to dismiss and memorandum in support, the United States respectfully requests that Plaintiffs' motion for temporary restraining order and preliminary injunction be denied, and that

this action be dismissed.

Respectfully submitted,

CHARLES T. MILLER
United States Attorney

**s/Carol A. Casto**
Assistant United States Attorney
WV State Bar Number 890
Attorney for United States
P.O. Box 1713
Charleston, WV  25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: carol.casto@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2010, I electronically filed the foregoing *United States Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Rachel Moreland, Esquire
Bradley J. Pyles, Esquire
Charles F. Donnelly, Esquire

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Grant Crandall, Esq.
Judith Rivlin, Esq.
United Mine Workers of America
18354 Quantico Gateway Drive
Triangle, VA  22172-1779

**s/Carol A. Casto**
Assistant United States Attorney

10