IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
WEST VIRGINIA

**ESTATES OF WILLIAM I. GRIFFITH and**
**RONALD MAYNOR,**
**and**
**MORELAND & MORELAND,**
**2518 Kanawha Blvd., Charleston, WV**
**and**
**UNITED MINE WORKERS OF AMERICA**
**INTERNATIONAL UNION,**
**18354 Quantico Gateway Drive, Triangle, VA**

                    **Plaintiffs**

**v.**

**JOSEPH MAIN, Assistant Secretary**
**MINE SAFETY and HEALTH ADMINISTRATION**
**U.S. Department of Labor,**
**and**
**HILDA SOLIS, Secretary,**
**U.S. Department of Labor**

                    **Defendants.**

## PLAINTIFFS' RESPONSE TO MSHA'S MOTION TO DISMISS

### I.  Standard of Review

Until the recent Supreme Court decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

127 S.Ct. 1955 (2007), courts routinely followed the rule set forth in *Conley v. Gibson*, 355 U.S.

41, 45-46 (1957) that, "a complaint should not be dismissed for failure to state a claim unless it

appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which

would entitle him to relief." Pursuant to *Twombly*, to survive a motion to dismiss, a complaint

must contain factual allegations that are "enough to raise a right to relief above the speculative

level." 127 S. Ct. at 1965. As under *Conley*, a complaint must be liberally construed, assuming

the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Id. at 1964-65. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *Id.* Accordingly, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" Id. at 1965 (citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. Rather, the facts set forth in the complaint must be sufficient to "nudge the claims across the line from conceivable to plausible." *Id.* at 1974.

In 2009 the Supreme Court in Aschcrot v.Iqbal, No. 07-1015  stressed that Rule 8, which governs pleading, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Slip. op. at 14. It added that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. On the contrary, to make a claim plausible, a pleader must not merely allege, but must show that he is entitled to relief. See id. at 15. As the Court explained, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " Id. (citing FED. R. CIV. P. 8(a)(2))

MSHA has moved to Dismiss the Complaint under Rule 12(b)(1) and Rule 12(b)(6). A 12(b)(6) Motion tests the legal sufficiency of a complaint but does not resolve the factual questions, the merits of the claim or the applicability of defenses.  Presley v. City of Charlottesville, 464 F.3d 480 (4th Cir.2006).  The Court must view the complaint in the light

most favorable to the non moving party and accept the pleaded facts as true.  Mylan Labs, Inc. v. Matkari, 7 F.3d 1130 (4th Cir. 1993).

The Complaint here properly invokes this Court's jurisdiction under 28 USC 1331 seeking review by this Court of action by a federal agency.  The Complaint refers the Court to MSHA's responsibility to conduct the investigation at issue in this case pursuant to the Miner Act.  It alleges that the procedure announced by MSHA for this particular investigation is not consistent with MSHA's duties under the Miner Act and requests the Court compel MSHA to follow procedures previously promulgated by MSHA for such investigations.  Taking all such allegations as true, Plaintiffs have properly pled a cause of action for judicial review of agency conduct not in accordance with law.

A 12(b)(1) motion asserts that the Court does not have subject matter jurisdiction.  This motion requires the Court to consider whether plaintiffs pleading, with the allegations taken as true, plead jurisdiction and a meritorious cause of action.  As discussed, infra, the Complaint properly pleads jurisdiction in this Court seeking judicial review of agency action allowed under the provisions of the APA.

## II. Introduction

In the case at bar the presumption is that review is available. When coupled with the absence of any indication in the statute that MSHA's present action is committed wholly to the discretion of the agency or that review is otherwise precluded, leads to the conclusion that, under the federal question jurisdiction statute, this district court has jurisdiction, subject only to preclusion-of-review specifically retained by Congress applied to *orders, notices and decisions.*

3

### III. Plaintiffs have properly invoked the jurisdiction of this Court under 28 USC 1331. MSHA's claim of sovereign immunity fails because 5 USC 706 waiver of sovereign immunity applies for purposes of review of agency actions under the APA.

Plaintiffs[1] filed this action seeking to compel MSHA to follow the Mine Act and its own written policies in the conduct of its investigation of the explosion at the Upper Big Branch mine on April 5, 2010.

Plaintiffs do not seek to "interfere in MSHA's statutorily mandated investigation of this mine disaster" as MSHA claims on page 4 of its memorandum; rather, Plaintiffs invoke this Court's jurisdiction to compel MSHA to conduct its statutorily mandated investigation of this mine disaster in a manner required by the statute and MSHA's own written policy and procedures.

### A. THE MINE ACT DOES NOT BAR TRADITIONAL PRINCIPLES OF REVIEWABILITY.

*5 U.S.C. 701(a)(2)* provides that judicial review is permitted unless "agency action **is** committed to agency discretion by law". Specifically, as the Court announced in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) agency action is "committed **to** agency discretion" only in *rare* cases where the terms of the governing statute are so broad **that**

---

[1]Plaintiffs are the families of two deceased miners and two "miners representatives" (qualified by MSHA regulations [30 CFR 40 et.seq.] as **expected participants** in any MSHA inspection or investigation) and the estates of two miners who were killed in the explosion at the Upper Big Branch mine on April 5, 2010 (while MSHA regulations do not expressly provide for the participation in an accident investigation of representatives of the affected families, MSHA precedent does allow such participation [insert reference here to the correct letter from Rachel citing such prior instances]. MSHA policy, completely ignored by its Memorandum in Support of Motion to Dismiss, mandates the use of public hearings as an **investigative tool** when certain circumstances exist as they do in this instance–see Plaintiffs Memorandum in Support of Temporary Restraining Order and Preliminary Injunction, p.___ .

4

there is *no* meaningful law to guide the court's decision, i.e., there is "no law to apply." In

*Secretary of Labor v. Twentymile Coal Co.* 456 F.3d 151, 159-160, 373 U.S.App.D.C. 1, 9 - 10

(C.A.D.C., 2006) the court considered the application of APA and preclusion of review in the

context of Section 507 of the Mine Act.

> Contrary to the view of the Commission, however, the fact that § 701(a)(2) itself
> is inapplicable does not mean that the principles underlying it are also
> inapplicable. Rather, as the Supreme Court has explained, "the Administrative
> Procedure Act ... *codifies* the nature and attributes of judicial review, including
> *the traditional principle* of its unavailability 'to the extent that ... agency action is
> committed to agency discretion by law.' " *ICC v. Brotherhood of Locomotive
> Eng'rs,* 482 U.S. 270, 282, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987) (quoting 5
> U.S.C. § 701(a)(2)) (emphasis added). "In *Chaney,*" the Court said, "we found
> that the type of agency decision in **10 *160 question has traditionally been
> committed to agency discretion, and ... that the Congress enacting the APA did
> not intend to alter that tradition." *Id.* (internal quotation marks omitted).[FN9]
> INDEED, THIS COURT has rejected the claim that the "conclusive language of
> section 701 applies only to bar review under the APA." *Steenholdt,* 314 F.3d at
> 639. [FN10] Accordingly, the traditional principles of nonreviewability discussed in
> Part III.A are applicable here, notwithstanding § 507 of the Mine Act.

The *Twentymile Coal Co.* Court states "that judicially manageable standards may be found in

formal and informal policy statements and regulations as well as in statutes[2]." *Id*. At 159.

(Emphasis in original) (Internal quotation marks and citation omitted).

In *Oil, Chemical and Atomic Workers Intern. Union v. Zegeer* 768 F.2d 1480, 1487, 248

U.S.App.D.C. 47, 54 (C.A.D.C.,1985) the Court considered the history of applicability of

Administrative Procedures.

---

[2]The Supreme Court and D.C. Circuit Court have recognized that, even if the statute in question does not provide meaningful standards to apply, an agency's actions may be reviewable if the agency itself has provided such standards in binding statements. *Heckler*, 470 U.S. at 836-37; *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003); *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987).

The provision contained in 30 U.S.C. § 956 originated as a section of the Federal Coal Mine Health and Safety Act of 1969, Pub.L. No. 91-173, § 507, 83 Stat. 742, 803. That Act delineated separately enforcement and standard-setting functions, and used the "order, notice, decision" terminology in conjunction with the former function. *Compare id.* § 104(b), 83 Stat. at 751 (when violation of standard is found on inspection of a mine, "notice" shall issue to operator), *and id.* § 104©)(1), 83 Stat. at 751 (if second infraction is found, an "order" shall issue), *and id.* § 105(b), 83 Stat. at 753 (Secretary, on receiving report of investigation, shall issue a written "decision"), *with id.* § 101(a), 83 Stat. at 745 (Secretary shall develop, promulgate, and revise safety "standards").Similar usage of "order, notice, decision" terminology continues in the 1977 Mine Act. *Compare* 30 U.S.C. §§ 813-819 (1982) (references to "notice," "citation," "order," "decision" in conjunction with inspection-investigation enforcement activities) *with id.* § 811(a) (development, promulgation, and revision of health and safety "standards").

In accordance with *Zegeer*, MSHA's claim that Section 507 of the Mine Act, *30 U.S.C. 956*, exempts the application of the APA in this case is unfounded.  The very terms of the section MSHA relies upon refutes its argument. The statute indicates that the APA does not apply to permit review via the APA of agency *orders, notices, and decisions. These terms of art* are used in the Miner Act's legislative scheme for enforcement functions by MSHA of the Act's provisions.  Id. at 1480.  The legislative history of the Act, although scant, reveals that the purpose of Section 507's language exempting the APA's application lies in the rational fact that the Miner Act specified its own administrative procedures for handling *orders, notices and decisions* as issued by MSHA in its enforcement procedures.

6

The issue before this Court is neither an *order, notice, or decision* issued by MSHA

under its enforcement functions of the Mine Act; rather, the issue is whether MSHA can

proceed using an investigative procedure adopted by press release (see Exhibit D to Plaintiffs'

*Memorandum in Support of Motion for Temporary Restraining Order and Preliminary*

*Injunction* ) instead of following the investigative procedure mandated by the Mine Act at 30

USC 813 and its own written policy. *see MSHA HANDBOOK SERIES; Accident/Ilness*

*Investigations Procedures, pp. 13-16, 24-26, 31-34, 38, available at:*

*http://www.msha.gov/READROOM/HANDBOOK/PH00-I-5.pdf*

In the present case, as cited in Plaintiff's memo in support of its motion for TRO, there

is law to apply including statutes, rules, and policy statements. In *Community Nutrition Institute*

*v. Young* 818 F.2d 943, 946, 260 U.S.App.D.C. 294, 297 (C.A.D.C.,1987) the court confides

that application of administrative law is not an easy task.

> The distinction between legislative rules and interpretative rules or policy
> statements has been described at various times as "tenuous," (citation omitted),
> "fuzzy," (citation omitted), "blurred," (citation omitted), and, perhaps most
> picturesquely, "enshrouded in considerable smog." (Citation omitted) As
> Professor Davis puts it, "the problem is baffling." 2 K. Davis, Administrative
> Law Treatise 32 (2d ed. 1979). By virtue of Congress' silence with respect to this
> matter, it has fallen to the courts to discern the line through the painstaking
> exercise of, hopefully, sound judgment. (Citation Omitted)

**B. Subject Matter Jurisdiction Exist**

While the government cites Califano v. Sanders, 430 U.S. 99 (1977) for the proposition

that the APA does not by itself confer subject matter jurisdiction, it fails to address the rational

of that decision.  The Supreme Court's decision discusses the 1976 amendment to 28 USC 1331

as its reason for its determination that its own prior holdings were no longer necessary.  The

Court points out that the 1976 amendment acted "to confer jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate..." <u>Califano, at 105.</u>

     <u>Califano</u> also held, in that particular case, that the District Court could not review the decision of the Secretary of Health and Human Services as there existed in the statutory scheme a "preclusion-of-review" statute.  However, it made clear that absent such a statute, jurisdiction to review agency action or failure to act, as here, lies in the federal courts under the terms of 28 USC 1331.  While the government argues here that such a "preclusion-of-review" statute exists, its argument in that respect fails as well. <u>See supra.</u>

     As this Court has jurisdiction of this case, the next argument to be considered is the government's misplaced argument that there is no waiver of sovereign immunity.

### III.  Sovereign Immunity Has Been Waived by Congress

     The immunity of the government from this action was waived by Congress in its enactment of the Administrative Procedures Act.  <u>5 USC 702.</u>  "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action...is entitled to judicial review thereof" clearly sets forth Congress' intent to waive the government's immunity to allow judicial review of agency actions, including MSHA's actions here.

     Such waiver allows the aggrieved to bring "any applicable form of legal action, including actions for declaratory judgements, or writs of prohibitory or mandatory injunction." <u>5 USC 703.</u>  In the instant case, the APA waives any sovereign immunity claimed by MSHA to judicial review of its actions by way of declaratory or injunctive relief.  As an agency of the

federal government, MSHA is well aware that its actions are reviewable by federal courts, its specious argument to the contrary notwithstanding.

Having established jurisdiction and the waiver of sovereign immunity, we now turn to MSHA's overbroad argument regarding the supposed "preclusion-of-review" statute within the Miner Act.

**IV.  The Miner Act Does Not Preclude Judicial Review of MSHA's Actions Here**

As noted above, MSHA's adopted procedure in the investigation of the Upper Big Branch mine explosion is one proclaimed by press release.  The press release, just as MSHA's Response Memorandum, ignores Section 103 of the Miner Act, 30 USC 813, MSHA's own written policy, reflected in its "Accident/Illness Investigations Procedures," and MSHA precedent.  These "judicially manageable standards" allow a court parameters with which to review MSHA's actions.[3]

30 USC 813 provides that "miners representatives" are to be included in the investigation procedures of a mine accident; MSHA's own investigation procedures mandates that "miners representatives" be included in witness interviews and that the investigative tool of a public hearing is to be utilized in an investigation when certain criteria are met, and; MSHA precedent exists for the inclusion of family representatives in an MSHA accident investigation. MSHA has provided the Court with no justification for ignoring the Miner Act and its own policies and precedent; rather it argues that this court nor any other has  power to ever review its actions taken contrary to the statute and MSHA policy and precedent.

---

[3]  Such standards may be found in formal and informal statements and regulations as well as in enabling statutes.  Secretary of Labor v. Twentymile Coal Co. 456 F.3d 151(D.C cir. 2006).

9

Despite this arbitrary disregard of its own enabling statute and its own policy and precedent, its abuse of discretion in doing so, and its plan in contravention of law, MSHA argues that 30 USC 956 precludes this court's review of its actions.  That statute provides that "section 701 to 706 [of the APA] shall not apply to the making of any *order, notice, or decision* made pursuant to this chapter or to any proceeding for the review thereof."  MSHA is well aware that the interpretation it implies for this statute is overly broad.  Oil, Chemical and Atomic Workers International Union v. Zeeger, 768 F.2d 1480 (D.C. cir. 1985).

Section 956 of the Miner Act indicates only that the APA does not apply to permit review via the APA of agency *orders, notices, and decisions.* These terms of art are used in the Miner Act's legislative scheme for *enforcement* functions by MSHA of the Act's provisions. See Zeeger, ftnt. 10.  The legislative history of the Act, although scant, reveals that the purpose of Section 956's language exempting the APA's application to the Miner Act's administrative procedures lies in the rational fact that the Miner Act specified its own procedures for handling *orders, notices and decisions* as issued by MSHA when enforcing the health and safety standards of the Act. ftnt. 12, Id.

There are no *orders, notices and decisons* at issue in this case.  What is at issue here is MSHA's adoption of procedure by press release–a procedure that ignores the requirements of the Miner Act and MSHA written policy and precedent.  If, as a result of its investigation, MSHA issues an *order, notice, or decision* to or affecting the mine operator, the substance of Section 956 will limit the procedures relating to such to the administrative procedures specified within the Miner Act.

Here, MSHA is not exercising prosecutorial discretion. The Miner Act and MSHA policy and precedent compel the agency to act within the parameters of the law enacted by Congress and its own policies and precedent.  The agency cannot be heard to claim unfettered discretion when Congress and the agency itself has set boundaries by law and written policy. MSHA's claim to a "preclusion-of-review" statute fails.

## V.  Conclusion

MSHA argue on Page 2 of its memo in support of its motion to dismiss "Congress vested *absolute* discretion and sole responsibility for investigations under the Mine Act to the Secretary and her designees. " (Emphasis Added) The foregoing discussion makes clear that this assertion is incorrect and not in accordance with statutory authority. In the words of now Justice Scalia "there is deference and there is deference-and the degree accorded to the agency on a point such as this is not overwhelming." *Brock v. Cathedral Bluffs Shale Oil Co.* 796 F.2d 533, 537, 254 U.S.App.D.C. 242, 246 (C.A.D.C.,1986).

The Mine Act simply states that "for the purpose of making any investigation of any accident or other occurrence relating to health or safety . . . the Secretary may, after notice, hold public hearings, and may sign and issue subpoenas for the attendance and testimony of witnesses . . . ."

In *Int'l Union, UMWA v. Martin*, 785 F.Supp. 1025 (D.D.C. 1992), the court counseled that employer and miners' representatives have the right, under Section 103(f) of the Mine Act, 30 U.S.C. § 813(f), to attend accident investigation interviews conducted at the mine.

11

Contrary to its assertions that Plaintiffs ignore the applicable law, MSHA acts without authority and in contravention of its own enabling statute, regulation and policy. Indeed, the Mine Act does not provide authority to conduct private interviews. The Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq., provides that "the Secretary . . . is authorized . . . to question privately any . . . employer, owner, operator, agent or employee." 29 MSHA Inspections and Investigations: The Mine Act has no similar provision evidencing that Congress did not grant the agency authority to conduct private interviews.

Finally, no preclusion of judicial review exists in the Miner Act that affects this case. This court has jurisdiction of the case presented and MSHA cannot hide behind sovereign immunity long ago waived by Congress.  The arbitrary actions of MSHA, constituting an abuse of discretion and not in accordance with law are reviewable by this Court.

The government's <u>Motion to Dismiss</u> fails and must be denied.

Respectfully Submitted,


_____/S/ Rachel Moreland_____
Rachel Moreland, Esq. (WVSB #9767)
**MORELAND & MORELAND, l.c.**
117 E. Washington Street, Ste. 14
Lewisburg, WV 24901
P:(304)793-4529/F:(304)793-4530
rachel@morelandfirm.com


_____/S/ Mark D. Moreland_____
Mark D. Moreland, Esq. (WVSB#4754)
**MORELAND & MORELAND, L.C.**
2518 Kanawha Blvd., E.
Charleston, WV 25311
(304) 344-5278 fax: (304) 344-5283
mark@morelandfirm.com

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
WEST VIRGINIA**

**ESTATES OF WILLIAM I. GRIFFITH and
RONALD MAYNOR,
and
MORELAND & MORELAND,
2518 Kanawha Blvd., Charleston, WV
and
UNITED MINE WORKERS OF AMERICA
INTERNATIONAL UNION,
18354 Quantico Gateway Drive, Triangle, VA**

**Plaintiffs**

**v.**

**JOSEPH MAIN, Assistant Secretary
MINE SAFETY and HEALTH ADMINISTRATION
U.S. Department of Labor,
and
HILDA SOLIS, Secretary,
U.S. Department of Labor**

**Defendants.**

## CERTIFICATE OF SERVICE

We hereby certify that on May 18, 2010, we served upon all parties **Plaintiffs' Response
to MSHA's Motion to Dismiss**, by electronic mail and/or U.S. Mail to the parties and counsel
as set forth below.

We further certify that this pleading was filed electronically with the Clerk of the Court
using the CM/ECF system, which will send notification of such filing to the following CM/ECF
participants.

Carol A. Casto
Assistant United States Attorney
Attorney for United States
P.O. Box 1713
Charleston, WV 25326

13

Bradley J. Pyles
Pyles & Turner, LLP
P.O. Box 596
Logan, WV 25601


Charles F. Donnelly
United Mine Workers of America
1300 Kanawha Boulevard, E.
Charleston, WV 25325


Grant Crandall
United Mine Workers of America
18354 Quantico Gateway Drive
Triangle, VA 22172-1779


Judith Rivlin
United Mine Workers of America
18354 Quantico Gateway Drive
Triangle, VA 22172-1779



         /S/ Rachel Moreland
_____
Rachel Moreland, Esq. WVSB: 9767



         /S/ Mark D. Moreland
_____
Mark D. Moreland, Esq. WVSB: 4754




14