IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| ESTATES OF WILLIAM I. GRIFFITH and ) <br> RONALD MAYNOR, ) <br> and ) <br> MORELAND & MORELAND, ) <br> 2518 Kanawha Boulevard, Charleston, WV ) <br> and ) <br> UNITED MINE WORKERS OF AMERICA, ) <br> INTERNATIONAL UNION, ) <br> 18354 Quantico Gateway Drive, Triangle, VA ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> JOSEPH MAIN, Assistant Secretary ) <br> MINE SAFETY and HEALTH ADMINISTRATION) <br> U.S. Department of Labor, ) <br> ) <br> Defendant. ) | Civil Action No. 2:10-cv-00716 |

**UNITED MINE WORKERS OF AMERICA'S RESPONSE
IN OPPOSITION TO MOTION TO DISMISS COMPLAINT**
and
**REPLY TO UNITED STATES RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

The government filed a Motion to Dismiss relying primarily on its claim of sovereign immunity. It also filed its Response opposing the Plaintiff's Motion for injunctive relief, claiming the government would be harmed, while Plaintiffs would not suffer any irreparable harm, if an injunction would issue. This brief responds to both of those government pleadings.

In its filings, the government concedes that MSHA has affirmatively decided to remove miners' representatives from a critical aspect of the Upper Big Branch accident investigation: the witness interviews. However, the government offers no response whatsoever to the Plaintiffs' concern that MSHA itself may have played some role in the root causes of the

Upper Big Branch disaster.  Likewise, it does not even attempt to rebut the factual allegations revealing significant problems that arose in past accident investigations when MSHA relied on voluntary interviews.  See pp. 6-7 of UMWA's Memo in Support.

It is particularly ironic that despite many previous lawsuits over MSHA's investigative procedures, this is the first time the government has claimed a sovereign immunity defense.  Even though cases concerning MSHA's post-accident investigation procedures have been litigated in various jurisdictions and over several decades, heretofore the government never asserted any claims of sovereign immunity.  Moreover the reviewing courts dealing with the same question – which parties can participate in post-accident investigative interviews -- all were untroubled about the court's jurisdiction: each exercised subject matter jurisdiction and resolved the dispute with a decision on the merits.  <u>Salt Lake Tribune v. Elaine L. Chao</u>, 2007 WL 2973269, (D. Utah Oct. 9, 2007); <u>UMWA v. Martin</u>, 785 F. Supp. 1025 (D. D.C. 1992); <u>Society of Professional Journalists v. Secretary of Labor, et al</u>., 616 F. Supp. 569 (D. Utah 1985), *vacated as moot*, 832 F. 2d 1180 (10th Cir. 1987).

And while the reviewing courts in the earlier cases concluded that MSHA possessed discretion to limit the attendance of non-governmental parties for non-public hearings, each is distinguishable insofar as none involved allegations of MSHA misconduct, as we have in the instant matter.   As District Court Judge Winder stated:

> Openness is crucially important to the type of hearing
> MSHA conducted…openness ensures that MSHA properly
> does its job…
>
> Openness safeguards our democratic institutions.  Secrecy
> breeds mistrust and abuse.  As Justice Brandeis stated…
> Sunlight is said to be the best of disinfectants; electric light
> the most efficient policeman. [cite omitted].  A right to

>open hearings is necessary to prevent any government body
>from abusing the power it is given.[1]

Society of Professional Journalists, 616 F. Supp at 576.

In the instant matter, the government asserts it has *absolute discretion to conduct its investigation* however it wants.  In particular, its motion to dismiss states this investigation is "committed to the absolute discretion of an independent agency of the Executive Branch of the United States government."  Then, in its Memo in Support, the government claims "Congress vested *absolute discretion* and sole responsibility for investigations under the Mine Act to the Secretary and her designees" and that the "Secretary may conduct these investigation in the manner she deems most appropriate [emphasis added]".

Unlike cases where sovereign immunity is typically applied, this suit was not brought to seek damages or other restitution from the Government.  Instead, this suit simply seeks to compel MSHA to perform the investigation the Mine Act imposes, and to do so in a fully effective manner.  In short, MSHA cannot properly execute its duty to investigate the Upper Big Branch mine disaster without subjecting the investigation to outside observation.  And sovereign immunity does not apply when the government acts beyond its statutory powers. Dugan v. Rank, 372 U.S. 609 (1963).   Thus, sovereign immunity should not immunize the government when MSHA is acting against its statutory and procedural duty to conduct a full investigation.

Further, the government's claim that the sovereign simply cannot be challenged contravenes the special role Congress reserved for miners in the Mine Act.  As miners' health and safety are "the first priority and concern" of the Mine Act, 30 U.S.C. Sec. 801,

---

[1] Judge Winder further explained why making transcripts available at a later date does not serve as an adequate substitute for an open hearing, noting that transcripts may be incomplete – because they are edited, or material is deleted (whether intentionally or by accident), and they fail to reveal the full flavor of the hearing because "emotions, gestures, facial expressions and pregnant pauses do not appear" on the transcript. Id at 578.

they should have a *meaningful* right to participate in the critical investigative interviews, albeit through their miners' representatives. Congress granted miners' representatives a special role in furthering miners' health and safety. 30 U.S.C. Section 813(f). MSHA has recognized that investigations that include miners' representatives "result[] in an investigation where the affected parties are afforded an opportunity to bring their viewpoints to the investigation and enhance the completeness of the report and … result in the most complete account of an accident." 60 Fed. Reg. at 40861.

Judge Gessel also recognized the critical role of miners' representatives during post-accident investigations:

> [They] can be the only check on the findings of the agency, which itself might share in the responsibility for the accident under investigation; by the time an inadequate or incomplete report issues and is reviewed [by the miners' representative] it may be too late to remedy. A process that allows a representative of the miners to be present, when the miners are the inevitable victims of the accidents, seems inherently better and more in keeping with the spirit, if not the explicit terms of the statute. Barring the miners' representative will only create the impression that there is something to hide.

UMWA v Martin, 785 F. Supp at 1028.

It is especially notable that under MSHA's established investigation procedures for Upper Big Branch, *operator representatives* will, in fact, have the right to attend interviews under the guise of functioning as witness representatives, i.e. lawyers paid for by the operator. Whenever a witness accepts such company counsel, MSHA's procedures also require the *exclusion* of designated miners' representatives. Thus, the only entities that actually will be excluded are the miners and the families of those killed.

In its pleadings, the government now claims that Plaintiffs' efforts to participate in the investigation interviews are disruptive. It claims that including the miners' representatives in the interviews would "necessarily impede the progress of this investigation." And, the government suggests, only by conducting witness interviews that are limited to government investigators, can MSHA expect witness candor. Its claims are irrational and unfounded.

MSHA has the duty to investigate mine accidents, and the authority to hold a public hearing in connection with accident investigations. As shown in our Memorandum in Support, without the participation of miners' representatives in investigative interviews, and without use of the public hearing procedure with the related use of subpoena, the Secretary's investigation will be compromised. The procedures MSHA created for this investigation will depend on the cooperation of witnesses, any of whom may refuse to answer any particular questions or all of them; they also can refuse to provide documents or any other information; and they can simply leave the interview at any point. The Mine Act references "public hearings" because without a public hearing, the Secretary's ability to investigate an accident is severely diminished.

The government asserts that excluding miners' representatives will result in no harm to them insofar as they could obtain information "if and when" they file civil litigation, and that government investigations are not conducted for private litigants. However, as designated miners' representatives Plaintiffs represent miners who will return to work at this mine and other mines. It is *these* miners' rights that are jeopardized by the procedures MSHA created. The miners went through a process to have miners' representatives serve as their advocate – representatives they want -- in addition to and apart from the government -- to ensure that their health and safety rights are protected. They have a right to know what happened.

The government claims it has a "moral responsibility" to determine how and why the explosion occurred at the Upper Big Branch mine. But the underlying investigation is not about moral duties, it is about learning what happened, *including* whether the government had any role. When the government seeks to exclude any outside observers, and asserts a "big-brother" attitude like it does here, it generates more suspicion. For as Judge Winder stated: "If the government is given the unfettered discretion to decide what information to make available to the press and the public, it has the power to distort the information and hide the truth." Society of Professional Journalists, 616 F. Supp at 576. In its pleadings, the government utterly fails to acknowledge the conflict of interest inherent to the investigation procedures MSHA created for the Upper Big Branch investigation.

Petitioners have no other remedy available. MSHA is already conducting its investigation and will soon begin its interviews of miners, if it has not already begun this process. For each interview MSHA conducts in private, subject only to its voluntary procedures, the quality of the entire investigation is subverted. Past experiences demonstrate that when MSHA uses such voluntary procedures, it fails to gather vital information. Information learned only later will be much less useful and likely incomplete. In shirt, the established procedure for the Upper Big Branch investigation deprives the affected miners who have designated Plaintiffs as miners' representatives. They have the right to learn all that really happened at the Upper Big Branch mine.

Congress anticipated that miners and their designated representatives would play an active role in Mine Act enforcement. However, the private, voluntary investigative interviews MSHA shall now pursue, absent the court's intervention, will occur in secret without any role

for the miners' representatives.  We suggest that represents an abuse of the government's discretion.

                                      Respectfully submitted,

                                      / s/ Grant Crandall
                                      JUDITH RIVLIN,
                                      GRANT CRANDALL, Bar #861
                                      United Mine Workers of America
                                      18354 Quantico Gateway Drive
                                      Triangle, VA 22172-1779
                                      (703) 291-2429

                                      CHARLES F. DONNELLY, Bar #1039
                                      1300 KANAWHA BLVD, EAST
                                      CHARLESTON, WV 25301
                                      (304) 343-0259

                                      BRADLEY PYLES, Bar #2998
                                      PYLES & TURNER, LLP
                                      P.O. BOX 596
                                      LOGAN, WV 25601
                                      (304) 752-6000
                                      COUNSEL FOR UNITED MINE
                                      WORKERS OFAMERICA

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2010, I served upon all parties the foregoing pleading, by electronic mail and/or U. S. Mail to the parties and counsel as set forth below.

I further certify that this pleading was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

>Carol A. Casto
>Assistant United States Attorney
>Attorney for United States
>P.O. Box 1713
>Charleston, WV 25326
>Phone: 304-345-2200
>Fax: 304-347-5443
>E-mail: carol.casto@usdoj.gov
>
>Rachel Moreland
>Moreland & Moreland
>2518 Kanawha Blvd.
>Charleston, WV 25331
>(304) 344-5278

/s/ Bradley J. Pyles
Bradley J. Pyles, WV Bar #2998
Pyles & Turner, LLP
P. O. Box 596
Logan, WV  25601
Telephone (304) 752-6000
Fax (304) 756-3123
brad.pyles@cphtlogan.com