**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ESTATES OF WILLIAM I. GRIFFITH, et al.,

                Plaintiffs,

v.                               CIVIL ACTION NO.  2:10-cv-00716

JOSEPH MAIN, Assistant Secretary,
Mine Safety and Health Administration,
U. S. Department of Labor,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiffs challenge the decision of the Mine Safety and Health Administration ("MSHA") to conduct private investigative interviews during its investigation of the mine explosion at the Upper Big Branch Mine.  Pending before the Court is the Defendant's Motion to Dismiss Complaint ("Def.'s Mot.") (Document No. 13).   Upon consideration of the motion, the memoranda in support thereof and in opposition thereto, the Court **GRANTS** Defendant's Motion to Dismiss Complaint.

## I.  ALLEGATIONS AND PROCEDURAL HISTORY[1]

On April 5, 2010, an explosion occurred at the Upper Big Branch Mine in Raleigh County, West Virginia, in which twenty-nine (29) coal miners tragically perished. The Mine Safety and Health Administration ("MSHA"), charged with overseeing the safety and health of the nation's mines, initiated an investigation into the explosion.  On May 10, 2010, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 1331 and 1651(a), Plaintiffs, the Estates of

---

[1]   All allegations are taken as true for the purpose of resolving the pending motion to dismiss.

Estate of Griffith, et. al v. Main

William I. Griffith and Ronald Maynor, the law firm of Moreland & Moreland–which represents the two deceased miners' estates–and the United Mine Workers of America ("UMWA"), an unincorporated association, initiated this litigation to seek injunctive and declaratory relief that Defendant must: (a) convene public hearings to investigate the Upper Big Branch mine disaster, and must include in the investigative interviews representatives of miners killed at the Upper Big Branch mine, as well as, the UMWA and any other properly designated miners' representatives for miners at the Upper Big Branch mine and (b) be enjoined from conducting private investigative interviews.[2] (Compl.¶ 1.)

Plaintiffs allege that "MSHA has the duty, *inter alia*, to investigate the causes of mine accidents[]" (*id*.¶ 5); that several groups, including the families of miners, have repeatedly requested MSHA to conduct public hearings to investigate the explosion (*id*. ¶¶ 10-12); that by a press release, on May 6, 2010, MSHA announced that it planned to conduct public proceedings with respect to its investigation, but that it would do so after it conducted private investigative interviews of miners, mining officials and others with knowledge of the explosion, and that the results of these private interviews would be made public, unless the interviewee requested confidentiality.  (*Id*. ¶ 13.) Plaintiffs further allege that MSHA's planned private investigative process: "is designed to and will exclude miners' representatives, as well as[,] family representatives[]"(*id*. ¶ 15); "will not be thorough" unless interviews are public "with all witnesses subject to the government's subpoena

---

[2]  Plaintiffs aver that "Moreland & Moreland . . . is seeking a) MSHA designation as a miners' representative for surviving miners employed at the Upper Big Branch mine pursuant to the Federal Mine Safety and Health Act of 1977 ("Mine Act"), 30 U.S.C. §§ 801, 813(f); and b) to provide a voice for the family members of miners killed." (Verified Complaint ("Compl.") (Document No. 1), ¶ 2.)  Plaintiffs also aver that "UMWA . . . since April 23, 2010 serves as a designated miners' representative pursuant to Section 103(f) of the Mine Act . . . for purposes of health and safety for surviving miners employed at the Upper Big Branch mine.  (*Id*. ¶ 3.)

Estate of Griffith, et. al v. Main

power[]" (*id.* ¶ 16); and will allow an analysis of MSHA's role in the investigation to "remain secretive and inherently suspect." (*Id.* ¶ 17.)   Plaintiffs also allege that private interviews will "jeopardize the entire investigation process[,]" (*id.* ¶ 22) and that without the participation of miners' representatives "only that which witnesses are willing to volunteer will be imparted . . . [and] critical questions and follow-up inquiries are forfeited." (*Id.* ¶ 18.)  Such interviews conducted in "secret" will cause harm to the surviving miners, other coal miners and family members of the deceased miners seeking to learn the cause of the explosion and how to prevent future explosions. (*Id.* ¶ 22.)

Believing that the private interviews would be conducted during the week of May 10, 2010, Plaintiffs filed a Motion for Temporary Retraining Order and Preliminary Injunction (Document No. 2) contemporaneously to the filing of its Verified Complaint.[3]  On May 17, 2010, the Defendant contemporaneously filed a  Motion to Dismiss Complaint ("Def.'s Mot.") (Document No. 13) and a Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Document No. 15).[4]  Defendant asserts that the Complaint should be dismissed for lack of subject matter jurisdiction, that the action is barred by sovereign immunity and that Plaintiffs

---

[3]   Contrary to Rule 7.1(a)(2) of the Local Rules of Civil Procedure, Plaintiffs did not submit a memorandum in support of their motion.  By Order on May, 10, 2010, the Court instructed Plaintiffs to do so within three days.  (Order (Document No. 5)).  On May 11, 2010, UMWA submitted its Memorandum in Support of Motion for Temporary Retraining Order and Preliminary Injunction (Document No. 7) and on May 13, 2010, Plaintiffs Moreland & Moreland and the Estates of William I. Griffith and Ronald Maynor submitted their Memorandum in Support of Motion for Temporary Retraining Order and Preliminary Injunction (Document No. 12). In addition to failing to file any supporting memorandum, the Court observes that Plaintiffs' motion did not contain any discussion with respect to whether Defendant had notice of the motion; likewise, there was no written certification of the effort counsel made to give notice and the reasons why notice should not be required.

[4]   In an effort to expedite briefing, the Court on May 12, 2010, ordered Plaintiffs to immediately serve on Defendant a copy of the Complaint and Summons and the pending motion.  The Court instructed Defendant to file any opposition, or other response, to the pending motion by May 17, 2010.  (Order (Document No. 8)).  On May 17, 2010, counsel for Plaintiffs advised chambers that Plaintiffs wanted an opportunity to respond to Defendant's motion to dismiss.  The Court ordered Plaintiffs to do so by close of business on May 18, 2010.  (Order (Document No. 16)).

Estate of Griffith, et. al v. Main

failed to state a claim upon which relief could be granted.  On May 18, 2010, Plaintiffs in separate

memoranda filed their opposition to the dispositive motion.  (*See* Plaintiffs' [Moreland & Moreland,

Estates of William I. Griffith and Ronald Maynor] Response to MSHA's Motion to Dismiss

("Griffith Oppn.") (Document No. 19); United Mine Workers of America's Response in Opposition

to Motion to Dismiss Complaint and Reply to United States Response in Opposition to Plaintiffs'

Motion for Temporary Restraining Order and Preliminary Injunction ("UMWA's Oppn.")

(Document No. 20)).  On May 19, 2010, Defendant filed its Reply.  (*See* United States Reply to

Plaintiffs' Response to United States Motion to Dismiss ("Def.'s Reply") (Document No. 22).  The

matter is fully briefed and ripe for the Court's consideration.[5]

## II.  APPLICABLE LAW

### A. Motion to Dismiss Standard

Federal courts derive their jurisdictional power to hear cases and controversies from Article

III of the Federal Constitution.  A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules

of Civil Procedure raises the fundamental question of whether a court is competent to hear and

adjudicate the claims brought before it.  It is axiomatic that a court must have subject matter

jurisdiction over a controversy before it can render any decision on the merits.  The burden of

proving subject matter jurisdiction in a motion to dismiss is on the party invoking such jurisdiction.

*See Richmond, Fredericksburg & Potomac R.R. Co. v. Untied States*, 945 F.2d 765, 768 (4th Cir.

---

[5]   Having considered that Defendant's motion to dismiss must first be resolved, the Court finds it unnecessary to substantively address herein the Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("Pls.' Mot.") (Document No. 2).

Estate of Griffith, et. al v. Main

1991). Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States,* 800 F.2d 393, 401 n.15 (4th Cir.1986), *rejected on other grounds, Sheridan v. United States,* 487 U.S. 392 (1988).   In this case, Defendant has facially attacked the Plaintiffs' complaint.  A "facial attack," questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id.*  If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id.*[6]

Defendant also seeks a dismissal for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Procedure 12(b)(6).  A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson,* 521 F.3d 298 (4th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* __ U.S.__, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

## B.  Administrative Procedure Act

The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, provides the legal framework for judicial review of agency actions. 5 U.S.C. § 702. However, "the APA is not an independent grant of subject matter jurisdiction to the federal courts.  Rather, 28 U.S.C. § 1331 serves as the jurisdictional basis for federal courts to review agency action."  *Sigmon Coal Co., Inc.*

---

[6]  On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based.  In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768  (citing *Adams v. Bain*, 697 F.2d 1213,1219 (4th Cir. 1982); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)).

Estate of Griffith, et. al v. Main

*v. Apfel*, 226 F.3d 291, 301 (4th Cir. 2000) (quoting *Califano v. Sanders*, 430 U.S. 99, 105, 107

(1977)); *see also Your Home Visiting Nurse Serv., Inc. v. Shalala*, 525 U.S. 449, 457-58 (1999)

(stating that 5 U.S.C. § 706 is not an independent grant of subject matter jurisdiction.) (citation

omitted).  Moreover, before review may be sought, the challenged agency action must be "final."

5 U.S.C. § 704.

### C.  *The Federal Mine Safety and Health Act of 1977*

The statutory authority by which MSHA derives its power to conduct mine investigations is

found in the Federal Mine Safety and Health Act of 1977 ("Mine Act"), 30 U.S.C. § 801, *et seq*.

Congress declared, *inter alia*, that "the first priority and concern of all in the coal or other mining

industry must be the health and safety of its most precious resource – the miner[.]" 30 U.S.C. § 801

The Mine Act was enacted to ensure the safety and health of the nation's mines.  Congress

authorized the Secretary of Labor, acting through MSHA, to promulgate mandatory safety and health

standards for the nation's mines, to conduct regular inspection of and to investigate accidents that

arise at those mines.  30 U.S.C. §§ 811 and 813.  In pertinent part, Section 813(a) authorizes MSHA

to conduct:

> inspections and investigations in coal or other mines each year for the
> purpose of (1) obtaining, utilizing, and disseminating information
> relating to health and safety conditions, the causes of accidents, and
> the causes of diseases and physical impairments originating in such
> mines, (2) gathering information with respect to mandatory health or
> safety standards, (3) determining whether an imminent danger exists,
> and (4) determining whether there is compliance with the mandatory
> health and safety standards or with any citation, order or decision
> issued under this subchapter or other requirements of this chapter.

30 U.S.C. § 813(a).  MSHA, in a provision separate from its investigatory authority, is also

6

Estate of Griffith, et. al v. Main

authorized to hold public hearings.  Section 813(b) provides that:

> For the purpose of making any investigation of any accident or other
> occurrence relating to health or safety in a coal or other mine, the
> Secretary may, after notice, hold public hearings, and may sign and
> issue subpoenas for the attendance and testimony of witnesses and the
> production of relevant papers, books, and documents, and administer
> oaths. . . .

30 U.S.C. § 813(b).  The Court observes that public hearings are not mandated by the statute.  *See*

*Int'l Union, UMWA v. Martin*, 785 F.Supp. 1025, 1027 (D.D.C. 1992) ("[N]othing in the statute

requires that investigations outside the mine be conducted solely as public hearings.  Nor does the

statute provide that any particular type of interview outside the mine pursuant to an investigation

triggers a requirement that a public hearing be convened.").[7]

## III.  DISCUSSION

The thrust of this litigation is Plaintiffs' contention that MSHA must conduct public hearings

of its investigation of the April 5, 2010 explosion and that private interviews should include miners'

representatives and family members of those deceased miners.  Defendant asserts that "[t]here is no

right, under the Mine Act or otherwise, of public access to or participation in accident

investigations." (Def.'s Memo. at 2.)  However, the foremost issue in this case is whether this Court

has jurisdiction over this litigation.  Defendant moves pursuant to 12(b)(1) and (6) of the Federal

Rules of Civil Procedure to dismiss Plaintiffs' complaint on the grounds that Plaintiffs "failed to

---

[7]    The Mine Act provides for the participation of operators and miners in inspections.  Section 813(f) states,
in part: "[s]ubject to regulations issued by the Secretary, a representative of the operator and a representative authorized
by the miners shall be given an opportunity to accompany the Secretary or his authorized representative during the
physical inspection of any coal or other mine made pursuant to the provisions of subsection (a) of this section, for the
purpose of aiding such inspection and to participate in pre- or post- inspection conferences held at the mine."  30 U.S.C.
§ 813(f).

Estate of Griffith, et. al v. Main

identify a claim cognizable at law, a statutory right to jurisdiction in this court, and an express waiver of sovereign immunity." (Def.'s Memo. at 12.)  Thus, the Court must first consider the Defendant's challenge of this Court's jurisdiction.

Defendant argues that Plaintiffs have failed to identify a statute of the United States which authorizes Plaintiffs' action. (Def.'s Memo. at 9.)  The burden is on Plaintiffs to prove that they properly invoked this court's jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at  768.  Rule 8(a)(1) of the Federal Rules of Civil Procedure requires, *inter alia*, that a complaint contain a short and plain statement of the grounds upon which the court's jurisdiction depends.  Fed.R.Civ.P. 8.  In their Complaint, Plaintiffs assert that this action is brought "pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, and 28 U.S.C. Sections 1331 and 1651(a)[.]"[8] (Compl. ¶ 1.)  Defendant contends that  28 U.S.C. § 1651(a) and Rule 65 of the Federal Rules of Civil Procedure do not offer an independent source of subject matter jurisdiction. (*See* Def.'s Memo. at 8-9.)  The Court agrees.

Section 1651(a), by its very language does not, by itself, confer on this Court subject matter jurisdiction.[9]  *See United States v. Denedo*, __U.S. __, 129 S. Ct. 2213, 2221 (2009) ("As the text of the All Writs Act recognizes, a court's power to issue any form of relief–extraordinary or otherwise–is contingent on the court's subject-matter jurisdiction over the case or controversy.").

---

[8]   Section 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  (28 U.S.C. § 1331).  In pertinent part, the All Writs Act , 28 U.S.C. § 1651, states: "all *courts established by Act of Congress* may issue all writs necessary or appropriate *in aid of their respective jurisdictions* and agreeable to the usages and principles of law."  (28 U.S.C. § 1651(a.)) (emphasis added).

[9]   *See supra* n.8

Estate of Griffith, et. al v. Main

Moreover, Rule 65 is the procedure by which a party may obtain injunctive relief.  The aim of Rule 65 is to set forth notice requirements for obtaining injunctive relief, the parameters of such relief and the parties bound by it.  There is no independent basis in Rule 65 for subject matter jurisdiction. Thus, the Court finds that neither 28 U.S.C. § 1651(a) nor Rule 65 of the Federal Rules of Civil Procedure, cited by Plaintiffs in their complaint, are sufficient grounds for this Court's jurisdiction. The Court observes that Plaintiffs did not address, in their oppositions, the basis for subject matter jurisdiction pursuant to either 28 U.S.C. §1651 or Rule 65 of the Federal Rules of Civil Procedure.

        Defendant next contends that Plaintiffs' invocation of  28 U.S.C. § 1331 is also insufficient to establish subject matter jurisdiction because Section 1331 only confers upon this Court general jurisdiction and is not a general waiver of sovereign immunity.  (Def.'s Memo. at 8-9.)  In opposition, the Griffith Plaintiffs contend that "[t]he Complaint. . . properly invokes this Court's jurisdiction under 28 U.S.C. § 1331 seeking review by this Court of action by a federal agency[]" and that "the Complaint properly pleads jurisdiction in this Court seeking judicial review of agency action allowed under the provisions of the APA." (Griffith Oppn. at 3.)   Setting aside Defendant's assertion with respect to sovereign immunity, the Court finds that Plaintiffs' Complaint does not contain any allegations affirmatively pleading this Court's jurisdiction pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.[10]  The first invocation of the APA was in the Griffith Plaintiffs' opposition.  However, the Court does not find the want of an affirmative allegation fatal. Rule 8(e) of the Federal Rules of Civil Procedure provides that "[p]leadings must be construed so

_____

[10]   *See infra* n.12.

9

Estate of Griffith, et. al v. Main

as to do justice." Fed.R.Civ.P. 8(e).   As the United States Court of Appeals for the Fourth Circuit

has stated, "if the allegations in Plaintiff's complaint are sufficient to support jurisdiction under a

provision . . . such as the APA, [a] court is authorized to examine the case under that provision."

*Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996) (citing *Celli v. Shoell*, 40 F.3d 324, 328

(10th Cir. 1994) ("Although a plaintiff must allege essential jurisdictional facts in a complaint,

federal jurisdiction may be sustained on the basis of a statute not relied on or alleged in the

pleadings.")).

       As an initial matter, the APA provides the framework for judicial review of agency actions.

*See* 5 U.S.C. §§ 701-706.   However, "the APA is not an independent grant of subject matter

jurisdiction to the federal courts.   Rather, 28 U.S.C. § 1331 serves as the jurisdictional basis for

federal courts to review agency action."  *Sigmon Coal Co., Inc.*, 226 F.3d at 301 (quoting *Califano*

*v. Sanders*, 430 U.S. 99, 105, 107 (1977)); *see also Your Home Visiting Nurse Serv., Inc.*, 525 U.S.

at 458 (stating that 5 U.S.C. § 706 is not an independent grant of subject matter jurisdiction.)

(citation omitted).  An examination of the allegations in the Complaint reveals that Plaintiffs allege

that MSHA is "an agency charged with overseeing the safety and health of the nation's mines[]"; that

MSHA has a duty to conduct an investigation of the accident; and, in accordance with that duty,

MSHA announced in a press release its procedure of how it will conduct its investigation.  Plaintiffs

make various allegations which challenge the propriety of MSHA's decision to conduct private

interviews, which exclude miners' representatives and family members, prior to holding its public

hearings.  Taking all of the allegations as true, the Complaint is one which challenges agency action.

Estate of Griffith, et. al v. Main

However, Defendant asserts that Plaintiffs are precluded from bringing an action under the APA. (Def.'s Memo. at 11-12; Def.'s Reply at 2-3.) Defendant contends that judicial review pursuant to the APA is precluded by Section 507 of the Mine Act, 30 U.S.C. § 956. (Def.'s Memo at 11.)   Section 956 provides:

> Except as otherwise provided in this chapter, the provisions of sections 551 to 559 and sections 701 to 706 of Title 5 shall not apply to the making of any order, notice, or decision made pursuant to this chapter, or to any proceeding for the review thereof.

30 U.S.C. § 956.  In support of its contention, Defendant cites *Speed Mining, Inc. v. Federal Mine Safety and Health Review Comm'n*, 528 F.3d 310 (4th Cir. 2008).  (Def.'s Reply at 5-6.)  In *Speed Mining*, coal mine owner-operator sought judicial review of the final decision of the Federal Mine Safety and Health Review Commission which held owner-operator liable for violations committed by an independent contractor.  The owner-operator argued that the citation of the violation was an abuse of discretion.  The defendant contended that the review of such a decision was unreviewable. The Fourth Circuit in *Speed Mining,* upon consideration of the Commission's enforcement authority concluded that when an action is "committed to agency discretion by law," it constitutes a "very narrow exception" to the presumption favoring judicial review. (*Speed Mining, Inc*. 528 F.3d at 316-17) (citing *Citizens to Preserve Overton Park Inc. v. Volpe*, 401 U.S. 402, 410 (1971)).  Further, the court in *Speed Mining* observed that the principles underlying Section 701(a)(2)–the unavailability of judicial review of actions committed to the agency discretion by law–are applicable to a determination of the court's ability to review the challenged agency action "even if the APA itself is not." *Speed Mining*, 528 F.3d at 317, n* (citation omitted).  The court noted that "the fact that the Mine Act states that sections 701 to 706 of the APA 'shall not apply' to any Mine Act review

11

Estate of Griffith, et. al v. Main

proceedings, 30 U.S.C. § 956 (2000), does not preclude the 'committed to agency discretion'

exception from applying[.]" (*Id.*)[11]   Plaintiffs, in opposition, make note of the text used in Section

956 with respect to "order, notice, or decision," to support its argument that Section 956 is not a bar

to APA review.

The Court finds Plaintiffs' contentions unconvincing.  The Court is persuaded that given the

text of Section 956 and the Fourth Circuit's observation of the same in *Speed Mining*, the Mine Act

does preclude APA review of "any proceeding for the review" of MSHA procedure for conducting

its accident investigations. *See also Oil, Chemical and Atomic Workers Int'l Union v. Zegeer*, 768

F.2d 1480 (D.C. Cir. 1985) ("As to the exclusion of the APA's governance specified in 30 U.S.C.

§ 956, we think it evident that Congress meant to identify, and remove from the APA fold, only the

mine legislation's compliance inspection, accident investigation, and sanction adjudication regime-

orders, notices, and decisions 'in a matter other than rule making.'") (citation omitted.)

Given Plaintiffs' assertion that this court's jurisdiction is invoked by Section 1331 for review

of an agency decision under the APA, and this court's determination that Section 956 of the

---

[11]   Although factually distinguishable from the case *sub judice*, *Speed Mining,* is instructive in that this Court finds that the statute applicable to MSHA's accident investigatory duties, 30 U.S.C. § 813, authorizes MSHA to conduct investigations to determine "the causes of accidents" and that MSHA inspections can be "aid[ed]" by a representative of the operator and a miner's representative.

*Estate of Griffith, et. al v. Main*

Mine Act, precludes such review, the Court finds that Plaintiffs' complaint should be dismissed for want of subject matter jurisdiction.[12]

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have failed to carry its burden to establish that this court has subject matter jurisdiction over the instant dispute.  Therefore, the Court does hereby **ORDER** that Defendant's Motion to Dismiss (Document No. 13) is **GRANTED**. Plaintiffs' complaint is hereby dismissed.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        May 20, 2010.

IRENE C. BERGER, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

---

[12]   Based on the foregoing, the Court finds it unnecessary to reach Defendant's assertion of sovereign immunity as a bar to subject matter jurisdiction.  However, to the extent that Plaintiffs argue that this Defendant has not raised such an argument in past litigations (UMWA's Oppn. at 2), the Court finds that Plaintiffs' argument is misplaced.  It is well-settled that subject matter jurisdiction can not be waived by a party in litigation; a party or the court, *sua sponte,* can raise the issue of lack of subject matter jurisdiction at any time.  Fed.R.Civ.P. 12(h)(3).  Moreover, Plaintiffs failed to cite to any authority for the proposition that a party's litigation position in a separate and distinct cause of action should govern a party's litigation position in the instant action.  Additionally, Plaintiffs cite to three cases which they contend concerned the question contemplated by this litigation, namely, which parties can participate in post-accident investigative interviews.  (UMWA's Oppn. at 2.) (citing *Salt Lake Tribune (Kearns Tribune, LLC) v. Elaine L. Chao*, No. 2:07-CV-739, 2007 WL 2973269 (D. Utah Oct. 9, 2007); *Int'l Union, UMWA v. Martin*, 785 F.Supp. 1025 (D.D.C. 1992); *Society of Professional Journalists v. Secretary of Labor, et al.*, 616 F.Supp. 569 (D. Utah 1985), *vacated as moot*, 932 F.2d 118 (10th Cir. 1987)).  However, it appears that the issue of sovereign immunity was not raised by any of the parties or addressed by the court in any of the cited cases.  Failure of such review does not foreclose Defendant from asserting the issue in this litigation.

As an aside, the Court notes that Plaintiffs acknowledge that the courts in each of the cited cases "concluded that MSHA possessed discretion to limit the attendance of non-government parties for non-public hearings[.]" (UMWA Oppn. at 2.) Plaintiffs assert that those cases are "distinguishable insofar as none [of those cases] involved allegations of MSHA misconduct." (*Id.*) However, this instant litigation does not involve "allegations of MSHA misconduct." (*See* Compl.¶¶ 9, 12, 14, 17.)

13